Harold J. HARRIS

v.

The UNITED STATES.

No. 715–83C.

United States Claims Court.

Dec. 11, 1987.

John Wesley Hall, Jr., Little Rock, Ark., for plaintiff.

Sharon Y. Eubanks, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. James M. Kinsella, Major, U.S. Air Force, General Litigation Div., Office of the Judge Advocate General, of counsel.

## OPINION

MARGOLIS, Judge.

On May 31, 1985, this court denied cross motions for summary judgment and remanded the case to the Air Force Board for Correction of Military Records (AFBCMR) for resolution of several factual issues. *Harris v. United States*, 8 Cl.Ct. 299, 303 (1985). The AFBCMR conducted an investigation and rendered its opinion on January 15, 1987, which resolved the factual issues and again denied relief to the plaintiff. The parties have renewed their motions for summary judgment. After a careful and searching review of the record and after hearing oral argument, the plaintiff's motion for summary judgment is denied, and the defendant's motion for summary judgment is granted.

## FACTS

Plaintiff Harold J. Harris first served in the Air Force from 1963 to 1967 as a dental specialist. After his honorable discharge on September 6, 1967, he was transferred to the inactive reserve, from which he was honorably discharged on November 12, 1969. He reenlisted on April 27, 1970. In just over a year, the Air Force sent him to Officer Training School, and he was appointed a second lieutenant. The plaintiff later studied navigation, became a navigator, earned promotion, served abroad, and impressed his superiors as capable and hardworking. By 1975, he had advanced to the rank of temporary captain.

In April 1976, the Air Force assigned the plaintiff to the 9th Airborne Command and Control Squadron, located at Hickam Air Force Base in Hawaii. The plaintiff served there as a navigator aboard EC–135 aircraft, the airborne command and control posts of the Pacific Command. Because the plaintiff's duties directly involved nuclear weapons, he was certified under the Personnel Reliability Program (PRP). The PRP's purpose is to prevent an unauthorized launch or detonation of a nuclear weapon. Under the PRP, all personnel whose duties directly involve nuclear weap-

ons must be screened to insure that they meet certain reliability criteria. An individual's immediate commander is given wide latitude to remove from nuclear weapons duties any individual whom the commander suspects of being unreliable.

Prior to Capt. Harris' assignment to Hickam, his Officer Effectiveness Reports (OERs) consistently rated him either "above standard" or "well above standard." Under the uncontrolled system of evaluations, which did not set limits on how many ratees could receive the highest rating, plaintiff's Evaluation of Potential was consistently rated as superior.[1] Beginning in 1975, OERs were rated under a controlled, or quota, system. The controlled system limited the number of officers that could be rated in the top block (a "1" rating) for their Evaluation of Potential rating.

In the controlled OER covering Capt. Harris' first year at Hickam, his rating fell to "meets standard" in nine areas and "above standard" in one area.[2] However, the raters praised Capt. Harris' motivation and enthusiasm and cited his making good progress as a navigator. The additional rater indicated that Capt. Harris had been "put at a disadvantage by being assigned to a unit which had previously employed only more experienced personnel." All three raters marked Capt. Harris' Evaluation of Potential in the number 3 block. Capt. Harris' controlled 1977 OER showed marked improvement over the 1976 OER, but his Evaluation of Potential remained at 3–3–3.

On September 29, 1978, the plaintiff wrote to his unit commander, Col. William L. Ernst, to file an Equal Opportunity and Treatment complaint (EOT) against one of plaintiff's superiors, Lt. Col. Panitch. The plaintiff alleged that Lt. Col. Panitch had made "a statement about ridding the

squadron of my Black ass, or something to that effect."

Five days later, on October 4, 1978, Col. Ernst requested that the base's social actions officer investigate Capt. Harris' complaint. On that same day, Col. Ernst removed Capt. Harris from the EOT position Capt. Harris had held. The inquiry officer collected and reviewed information from October 25 to November 6, 1978. He was unable to substantiate the allegations made by Capt. Harris, but noted that Capt. Harris: 1) seemed anxious about his permanent promotion; 2) believed himself to be the victim of racial discrimination and tried to convince others that he was being discriminated against; and 3) might be suffering physical and psychological strain beyond his tolerance. The inquiry officer recommended relieving Capt. Harris of all duties until he passed a physical and psychological examination. The Judge Advocate General reviewed the EOT report and found it legally sufficient.

Meanwhile, the close-out date for Capt. Harris' OER was October 10, 1978. On October 14, 1978, four days after the plaintiff's close-out period, the Air Force issued IMC 78–2, which amended AFR 36–10, the officer rating regulations. This amendment abolished the controlled (or quota) system. All new OERs were to be uncontrolled, and raters were to rate officers as individuals. All OERs closing-out on October 10, 1978 that were prepared before IMC 78–2 was issued and were being held for final action by reviewing officials were to be returned to the rating officers for reconsideration in the event the rating officers desired to make changes.

On October 26, 1978, about three weeks after Capt. Harris filed his EOT complaint, Col. Ernst sent Capt. Harris an OER covering the period from July 2, 1977 to October 10, 1978. The rater, Capt. Hudgins, rated the plaintiff very much in line with the

---

1. Plaintiff's OERs were as follows:

| Feb. 2, 1973–Oct. 12, 1973 | 9–4. | |
| Oct. 13, 1973–Apr. 12, 1974 | 9–4. | |
| Oct. 8, 1974–Aug. 31, 1975 | 2–3–3 | (new controlled system). |

2. Captain Harris' OERs while at Hickam AFB were as follows:

| Dec. 30, 1975–Oct. 31, 1976 | 3–3–3. | |
| Nov. 1, 1976–July 1, 1977 | 3–3–3. | |
| July 2, 1977–Oct. 10, 1978 | 3–4–4 | (contested OER) |

plaintiff's prior controlled OERs. Capt. Hudgins rated plaintiff as above standard or well above standard in seven areas and meeting the standard in three areas. Capt. Hudgins marked the number 3 block for Evaluation of Potential. In his comments Capt. Hudgins praised the plaintiff as "an exceptional officer who has demonstrated two outstanding characteristics: He is an excellent navigator ... with superb crew skills; and he is tireless in accepting new responsibilities and challenges for self-improvement."

The plaintiff's additional rater, Col. Ernst, did not concur with Capt. Hudgins' assessment of Capt. Harris' performance. Col. Ernst rated the plaintiff as below standard in four areas and as meeting the standard in six areas. One of the areas in which Col. Ernst gave Capt. Harris a below standard rating was for Human Relations. Previously, in every other OER, Capt. Harris had received the highest rating for Human Relations, except for two OERs in which he received the second highest rating. In accordance with these ratings, Col. Ernst rated Capt. Harris' Evaluation of Potential in the number 4 block. Col. Ernst stated that the plaintiff's "leadership shows a lack of poise and the initiative to complete difficult tasks. His daily work under stress does not resemble a high achievers'. Oral presentations lack clarity. His written text lacks organization, requires editing, and is vague. This forced me to remove him from the unit EOT position." As a whole, Col. Ernst's rating was a marked departure from the plaintiff's earlier OERs. Until this OER, plaintiff had received only favorable comments regarding his EOT activities, written and oral communication skills,[3] and adaptability to stress.[4]

Col. Joseph Trochta, Deputy Commander for Operations at Hickam, served as the indorser on Capt. Harris' 1978 OER. Col. Trochta concurred with Col. Ernst's assessment of Capt. Harris' performance. Col. Trochta rated Capt. Harris a "4" under the Evaluation of Potential. As a result of Col. Ernst's unfavorable rating and Col. Trochta's concurrence, plaintiff's overall rating was so low that Air Force regulations gave the plaintiff an opportunity to rebut the OER. The plaintiff appealed the rating to the Officer Personnel Records Review Board, alleging racial discrimination and improper command influence. The Board refused to void the OER.

In November 1978, Col. Ernst informed Capt. Harris of the results of the EOT inquiry, relieved him of his duties, and temporarily decertified him from the PRP. Col. Ernst claimed to be concerned about flaws in Capt. Harris' character, and said that he might make more recommendations after the psychological examination. On December 18, 1978, the director of Base Medical Services notified Col. Ernst that Capt. Harris had no psychopathy that required removing him from the PRP.

Nevertheless, Col. Ernst recommended, and Col. Sharman Stevenson, the base commander, approved the plaintiff's permanent decertification from the PRP on February 20, 1979. On March 8, 1979, the plaintiff submitted a rebuttal. On April 3, 1979, the Vice Commander of Hickam AFB ordered Col. John T. Miles, as Inspector General, to investigate the decertification. Col. Miles gathered information—including testimony from Capt. Harris—from April 3 to April 25, 1979. After reviewing Col. Miles' report and plaintiff's rebuttal, the Air Force

---

The 1976 and 1977 OERs were controlled, the 1978 OER was to be under the uncontrolled system.

**3.** The only comment even slightly critical of Capt. Harris' oral communication skills appeared in his 1976 OER, which stated that Capt. Harris had trouble making himself understood over the interphone.

**4.** Capt. Harris' uncontrolled OERs following the OER in contention also uniformly paint the

plaintiff as a superior officer. In Capt. Harris' September 1979 OER, he received the highest ratings in every category, and his raters were unanimous in their Evaluation of Potential—giving him a 1–1–1 rating. In his 1980 OER, Capt. Harris received well above standard ratings in seven out of the ten areas. From 1979 through 1984, Capt. Harris received the highest rating of 1–1 or 1–1–1 on every uncontrolled OER.

found that Col. Stevenson had sufficient grounds to decertify the plaintiff.

On May 31, 1979, because of the decertification, the base's Directorate of Assignments declared the plaintiff available for assignment to another base. To prevent such a reassignment, plaintiff sought an injunction from the U.S. District Court. The parties stipulated to dismissal without prejudice. *Harris v. Simm*, No. 81–0665 (D. Hawaii June 15, 1981).

On March 26, 1981, the plaintiff appealed to the AFBCMR seeking: 1) removal of decertification from the PRP; 2) removal of the 1978 OER from his records; and 3) flight pay from the date of decertification. The AFBCMR ruled that the plaintiff failed to show probable material error or injustice, but added that the plaintiff had "the right to submit newly discovered relevant evidence for consideration." 1983 AFBCMR 19.

During this period, plaintiff failed twice to win promotion to major.[5] By statute, the Air Force was obliged to discharge him. *See* 10 U.S.C. § 632(a) (1982). Plaintiff subsequently reenlisted as a sergeant to preserve his retirement benefits.

The plaintiff then filed a complaint in this court appealing the AFBCMR's decision. The plaintiff seeks flight pay computed from the date he was decertified from the PRP; removal from his file of the 1978 OER; removal of records of two failures to be promoted to major; a non-prejudicial explanation of the resulting gap; and reinstatement to the rank of captain with back pay computed from January 31, 1984, the date he was discharged from the Air Force.[6] The plaintiff originally requested an injunction, but this court denied the request. *See Harris v. United States*, 4 Cl.Ct. 418 (1984).

Both parties filed for summary judgment. Plaintiff challenged the AFBCMR's refusal to order his reinstatement to the PRP as arbitrary and capricious and unsupported by substantial evidence. Plaintiff also asserted that his October 1978 OER was prepared under the old controlled promotion system, which required raters to assign low marks to a portion of the officers they rated, rather than under the required uncontrolled system.

Because OERs are often prepared substantially in advance of an officer's close-out date, to be fair to the officers rated before October 14, 1978 under the old controlled system, IMC 78–2 provided: "Due to the system change, raters and additional raters must be given the opportunity to reconsider these reports and to make changes if they desire. Any activity holding such reports must immediately return them to raters for this purpose." AFR 36–10 Amendments, Part III, ¶ 5. Capt. Harris' rater, Capt. Hudgins, stated in an affidavit: "During the period we were undergoing a change from the controlled to the uncontrolled rating system. I rated Captain Harris prior to this change due to the fact that his reporting period closed out before the change." Capt. Hudgins could not recall whether the OER had been returned to him for reconsideration but stated that it was the perception among officers in the unit "to rate as though controls still existed."

The plaintiff argues that the Air Force violated its own regulations by failing to return the report for reconsideration. Plaintiff claims that had the OER been reconsidered, he would have received a favorable rating and would have won promotion. After considering the arguments of both parties, this court concluded that there were unresolved questions of material fact. Therefore, this court denied both parties' motions and remanded the case to the AFBCMR. The AFBCMR was specifi-

---

**5.** Plaintiff's OERs following his decertification were uniformly outstanding:

| Oct. 11, 1978–Sept. 24, 1979 | 1–1–1 |
| Sept. 25, 1979–Sept. 29, 1980 | 1–1 |
| Sept. 30, 1980–Mar. 1, 1981 | 1–1 |
| Aug. 19, 1981–Dec. 16, 1981 | 1–1 |
| Dec. 17, 1981–Aug. 13, 1982 | 1–1 |
| Aug. 14, 1982–Aug. 13, 1983 | 1–1–1 |
| Aug. 14, 1983–Jan. 1, 1984 | 1–1–1 |

**6.** Because plaintiff retired from the Air Force effective December 1, 1987, he has abandoned his claim seeking reinstatement into the PRP.

cally asked to resolve the following questions:

1) Was the 1978 OER [Officer Effectiveness Report] prepared under the quota system (controlled)?

2) If so, was it returned for reconsideration?

3) If not, did the invalid OER contribute:
   a) to the plaintiff's failure to win promotion?
   b) to the plaintiff's dismissal from the PRP [Personnel Reliability Program]?

Upon remand, the AFBCMR concluded that the 1978 OER was rated as uncontrolled and had not been prepared under the quota system. As a result, the AFBCMR concluded that the OER was not required to be returned to the raters for reconsideration. The Board stated: "This finding is predicated on our belief that the totality of the evidence establishes that the contested OER was rendered as a decontrolled report, without prejudice or personal bias and as rendered it is an accurate assessment of the applicant's duty performance and promotion potential during that particular period of his career." 1987 AFBCMR 6.

The Board further concluded that if the OER had been found to be in error or unjust, it would be necessary to constitute a Special Selection Board (SSB) to determine what impact the invalid OER had on the plaintiff's failure to win promotion. 1987 AFBCMR 7. Concerning whether the 1978 OER was a factor in plaintiff's decertification from the PRP, the Board adopted the Inspector General's investigation of plaintiff's decertification, which found adequate grounds to support the plaintiff's permanent decertification. Among these grounds was the poor OER.

The case has once again returned to this court, and the parties have renewed their motions for summary judgment. The plaintiff claims that the AFBCMR's conclusions on remand were arbitrary and capricious and not supported by substantial evidence.

## DISCUSSION

The defendant makes much of this court's alleged lack of jurisdiction to order plaintiff reinstated to the PRP. Because plaintiff has retired from the Air Force and no longer seeks reinstatement in the PRP, this issue need not be resolved. The remaining issues that must be addressed are whether the AFBCMR's refusal to void the OER and its conclusion that the OER was rated as uncontrolled were arbitrary and capricious, unsupported by substantial evidence, or contrary to law.

### A. *Standard of Review*

■ Congress has entrusted the primary duty of correcting military records with the correction boards. *Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813–14 (1979). This court does not sit as a super correction board. *See Skinner v. United States,* 219 Ct.Cl. 322, 330–31, 594 F.2d 824, 829–30 (1979); *Reale v. United States,* 208 Ct.Cl. 1010, 1013, 529 F.2d 533, *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 129 (1976). This court will not substitute its judgment for that of the correction board's, especially when the correction board is determining the suitability of an individual to be a military officer. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986).

■ In an appeal of a AFBCMR decision, this court has a very limited scope of review. *See Bockoven v. Marsh,* 727 F.2d 1558, 1566 (Fed.Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984); *Murray v. United States,* 9 Cl.Ct. 71, 74 (1985). Such review is limited to determining whether there has been substantial compliance with statutes and regulations, whether the agency acted arbitrarily or capriciously, and whether there is substantial evidence to support the agency's decision. *Morrow v. United States,* 227 Ct.Cl. 290, 296, 647 F.2d 1099, 1102, *cert. denied,* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 247 (1981); *California Canners & Growers Association v. United States,* 9 Cl.Ct. 774, 782–83 (1986).

■ Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *California Canners & Growers Association*, 9 Cl.Ct. at 783. Where reasonable minds might reach differing conclusions, the fact that this court would have reached a different conclusion than the one the agency reached is not sufficient for this court to overturn the administrative action. *Bayside Enterprise, Inc. v. National Labor Relations Board*, 429 U.S. 298, 304, 97 S.Ct. 576, 581, 50 L.Ed.2d 494 (1977); *Grieg*, 226 Ct.Cl. at 270, 640 F.2d at 1270; *Sanders v. United States*, 219 Ct.Cl. at 302, 594 F.2d at 814; *Snell v. United States*, 168 Ct.Cl. 219, 227 (1964).

Nevertheless, regulations require that OERs be objective assessments of the officer's performance. AFR 36–10 ¶ 5.6 (as amended by IMC 78–2). Regulations also prescribe the manner in which OERs are to be prepared. AFR 36–10 Ch. 4, 5. "If a particular officer's OER has not been so prepared and that defect could have resulted in his nonselection for promotion followed by discharge, this is legal and factual error and an injustice to the officer as well." *Sanders*, 219 Ct.Cl. at 303, 594 F.2d at 814.

Plaintiff, however, has the heavy burden of rebutting the "presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." *Guy v. United States*, 221 Ct.Cl. 427, 433, 608 F.2d 867, 870 (1979); *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813. The plaintiff must do more than "merely allege or prove that an OER seems inaccurate, incomplete, or subjective in some sense." *Hary v. United States*, 223 Ct.Cl. 10, 17, 618 F.2d 704, 708 (1980). The plaintiff must establish through " 'cogent and clearly convincing evidence' " that the Board's decision was arbitrary and capricious, unsupported by substantial evidence, or contrary to law for this court to overturn the AFBCMR's decision. *Grieg v. United States*, 226 Ct.Cl. 258, 269, 640 F.2d 1261, 1268 (1981) (quoting *Cooper v. United States*, 203 Ct.Cl. 300, 304–05 (1973)); *Newman v. United States*, 185 Ct.Cl. 269, 276 (1968).

B. *Validity of the Challenged OER*

Following the AFBCMR's 1983 decision, Capt. Harris obtained new evidence bearing on his 1978 OER and subsequent decertification. This new evidence called into question both the objectivity of the additional rater, Col. Ernst, and whether the OER had properly been issued as uncontrolled. Plaintiff's new evidence consists primarily of notarized letters from three of the four officers in Capt. Harris' rating chain.

Capt. Hudgins, Capt. Harris' rater for the 1978 OER, stated in an August 8, 1983 affidavit that during Capt. Harris' rating period the Air Force was "undergoing a change from the controlled to the uncontrolled rating system. I rated Captain Harris prior to this change due to the fact his reporting period closed out before the change." Capt. Hudgins further explained:

The perceptions in the unit, during this time period, were to rate as though controls still existed. That's why I inserted my caveat of "Promote to major at his primary promotion zone." I didn't want there to be any misconceptions as to Captain Harris' abilities as a qualified officer ready to accept more responsibilities. If I were to rate Captain Harris' performance then and apply it to today's rating system, which now has all the peculiarities worked out, I'd have to rate him a "1".

On December 6, 1983, Col. Trochta prepared a notarized statement "concerning the October 1978 uncontrolled '4' Officer Effectiveness Report." Col. Trochta stated:

In retrospect, it appears that the input provided me by his squadron's leadership may have been incomplete and inaccurate in some instances.

I was not provided the information that Captain Harris' rater would have rendered him a "1" Officer Effectiveness Report under the uncontrolled system.... I now question the impartiality

of some of the input provided me in light of more complete information.

Col. Trochta went on to state that reconsidering the facts and new information, he would rate Capt. Harris' performance during that period a "1" under the uncontrolled system.

In an October 25, 1983 statement, Col. Sharman Stevenson, Hickam AFB Wing Commander, who signed off on the plaintiff's permanent decertification, stated:

> New evidence reveals that there may have been some improprieties I was not aware of during Captain Harris' ordeal. I did not know that his immediate supervisor would have rendered him a "1" under the decontrolled system. Further, I was unaware that Captain Harris had experienced problems with the main characters involved in his decertification.

All three officers expressed a desire to alter their evaluations of Capt. Harris. Only Col. Ernst defended the accuracy of Capt. Harris' 1978 OER. The situation presented here is somewhat analogous to one in which, absent misstatements of fact, raters subsequently indicated that they rated an officer too low and would now, in retrospect, rate the person higher. *See e.g., Tanaka v. United States*, 210 Ct.Cl. 712, 538 F.2d 348 (1976), *cert. denied*, 430 U.S. 955, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977). However, in this case, Capt. Hudgins does not claim that, in hindsight, he simply rated Capt. Harris too low; rather, Capt. Hudgins indicates that his evaluation of Capt. Harris was inaccurate because the plaintiff's 1978 OER was not completed in conformity with AFR 36–10 as amended by IMC 78–2.

Plaintiff argues that Capt. Hudgins' failure to rate the plaintiff as uncontrolled, compounded with the questionable input from Col. Ernst, adversely affected the evaluations of Col. Trochta and Col. Stevenson, which caused the plaintiff's decertification from the PRP and eventually led to the plaintiff's discharge from the Air Force. Col. Trochta indicated that he rated Capt. Harris too low, not because of second thoughts about Capt. Harris' performance,

but because of irregularities in the rating process.

Upon remand to determine whether the OER was in fact controlled, in 1986 the Board contacted the plaintiff's raters for more information. Capt. Hudgins indicated that he did "not wish to provide any additional information." Col. Trochta could not recall exactly what information was made available to him in 1978. Col. Stevenson was not contacted for more information.

1. *The OER as Uncontrolled*

The Board considered a wide range of evidence bearing on the issue of whether the OER was rated as controlled or uncontrolled. The Board first considered the effective date of IMC 78–2. IMC 78–2, dated October 14, 1978, directed that effective October 10, 1978 controls were to be removed from all OERs and any officer who had not had an OER rendered since October 10, 1977 would receive an OER prepared with a close-out date of October 10, 1978. The Board noted that October 10, 1978 was the close-out date for the plaintiff's OER.

The Board next looked to the OER itself. The Board noted that all three of the rating officers signed the report after the effective date of IMC 78–2, October 14, 1978. Capt. Hudgins signed the OER on October 23, 1978; Col. Ernst signed the OER on October 25, 1978; and the indorser, Col. Trochta, signed it on December 11, 1978. Further, the evaluation form itself had been altered to conform to the requirements of IMC 78–2. In part V, Evaluation of Potential, language that instructed the raters to evaluate the officer's performance in comparison with contemporaries had been crossed out. Also, "Indorser" had been inserted to replace "Reviewer." IMC 78–2 required that these changes be made in the OER form. IMC 78–2 Part III, ¶ 6(a).

Next, the Board considered Capt. Hudgins' initial statement to the BCMR in which he stated that "although the OERs were not officially controlled by wing regulated quotas ... I felt we were required to rate individuals as if the control system

still existed ..." The Board concluded that this statement indicated that Capt. Hudgins was fully aware that the OER was to be issued as uncontrolled. The Board also looked to the Inspector General's report on the plaintiff's decertification, which stated that the 1978 OER was no longer controlled.

The Board concluded that there was "clear and convincing" evidence that the plaintiff's 1978 OER was rated as uncontrolled: the close-out date of the OER was October 10, 1978; the evaluation form was altered to conform to IMC 78–2: Capt. Hudgins indicated that he was aware of IMC 78–2; the signatures on the OER were dated more than one week after IMC 78–2 was issued; and the Inspector General's report classified the OER as "no longer controlled." Therefore, the Board concluded that the OER was issued as uncontrolled and that no regulatory violations occurred in the preparation of the OER.

■ As stated above, the standard of review that this court must apply is whether the AFBCMR's decision is arbitrary or capricious, unsupported by substantial evidence, or contrary to law. Although plaintiff holds Capt. Hudgins' statement as conclusive evidence that the OER was rated as controlled, there is substantial evidence available that the OER was rated as uncontrolled. The AFBCMR's decision was reasonable and based upon substantial evidence. The decision was not arbitrary, capricious, or contrary to law. Therefore, this court must affirm the AFBCMR's decision that the plaintiff's 1978 OER was rated as uncontrolled in conformity with IMC 78–2.

### 2. *Objectivity of the OER*

■ Plaintiff also alleges that due to a personal bias of Col. Ernst, the additional rater, the 1978 OER did not represent a true assessment of the plaintiff's abilities. Further, plaintiff claims that improper command influence from Col. Ernst resulted in Col. Trochta's low rating of plaintiff. These low ratings led in turn to the plaintiff's decertification from the PRP and then

to his discharge as a result of being passed over twice for promotion.

In *Sanders,* the Court of Claims ruled that an officer has a legal right to be considered for promotion "on a 'fair and equitable' basis and to have his proper rating considered by selection boards. 10 U.S.C. §§ 3442(c), 8442(c)." 219 Ct.Cl. at 302, 594 F.2d at 814. This court must ascertain whether, based on these allegations, the Board erred in not voiding plaintiff's OER.

Plaintiff alleges that Col. Ernst was biased against the plaintiff due to racial prejudice and because plaintiff filed an EOT complaint against Lt. Col. Panitch. Plaintiff does not support these allegations with any evidence other than the statements of Col. Stevenson and Col. Trochta that improprieties or inaccuracies were involved. Capt. Harris also submitted a statement from Lt. Col. Justin Loucks, the former chief of the Communications Section, which stated that Capt. Ernst used OERs as a weapon to punish officers or "to get even for a perceived threat."

While Col. Ernst's rating was the lowest rating plaintiff had ever received, Col. Ernst's conclusions were supported by statements from other individuals who worked with Capt. Harris indicating that Capt. Harris was in fact experiencing difficulties in his job performance. Capt. Mark Felman, Chief Navigator Flight Examiner, stated in a January 3, 1979 letter that Capt. Harris' "potential to advance professionally from line navigator to instructor and flight examiner is extremely questionable." Capt. Felman went on to question Capt. Harris' maturity and commented that Capt. Harris lacked "requisite characteristics which severely limit his ability to advance professionally."

Col. Donald Morgan, who flew with Capt. Harris a number of times in late 1977 and mid–1978, stated in a November 1, 1978 letter to Col. Trochta that he found Capt. Harris "technically competent and highly proficient in his specialty as a Navigator" but "noticed instances of dissatisfaction and dissension from Capt. Harris in the air" and an incident of bickering with the co-pilot.

Lt. Col. Daniel O'Leary, Squadron Navigator, in a January 8, 1979 letter, raised more serious doubts about Capt. Harris' abilities. Capt. Harris was criticized for the poor handling of his responsibilities as the Charts and Forms Officer and the Flight Plans Officer. Lt. Col. O'Leary claimed that Capt. Harris failed to finish projects on time and at one time signed out on leave depositing a partially finished flight plan in Lt. Col. O'Leary's distribution folder with a note appended asking Lt. Col. O'Leary to finish the project. Lt. Col. O'Leary also recounted a navigational error committed by Capt. Harris that resulted in missing an air refueling rendezvous on October 7, 1976.

On February 20, 1979, Col. Stevenson, Base Commander, cited to the above examples, together with plaintiff's substandard duty performance, as sufficient grounds to permanently decertify Capt. Harris from the PRP. Col. Stevenson later indicated that improprieties involving the 1978 OER occurred of which he had not been aware. Col. Stevenson indicated that had he been aware of these improprieties, he would not have permanently decertified the plaintiff.

On April 26, 1979, many of these allegations of less than standard performance were addressed in the Inspector General's (IG) report on Capt. Harris' permanent decertification. In that report, the IG interviewed 21 individuals who worked closely with Capt. Harris. The IG was unable to substantiate Lt. Col. O'Leary's claim that Capt. Harris missed a refueling rendezvous, but found one other instance on May 16, 1978 with Capt. Felman, where Capt. Harris missed a refueling rendezvous. In addition, the IG concluded that Capt. Harris did not perform to expected standards as Charts and Forms Officer, Building Custodian, Squadron Aerobics Officer, Squadron EOT Officer, and Base Instrument School Instructor. The IG believed a contributing factor to the substandard performance was that Capt. Harris was given too many additional duties without adequate supervision.

Plaintiff has not been able to meet his heavy burden of establishing through clear and convincing evidence that his 1978 OER was not an objective assessment of his performance during that period of time. While plaintiff does present some evidence indicating that there may have been irregularities in the OER process, most of this evidence is general in nature and does not contain substantiated specific instances of violations of regulations or concrete misrepresentations of fact. If this court were sitting as the fact-finder in this case, this court might have reached a conclusion different than the one the Board reached. However, that is not the test plaintiff must satisfy to prevail.

The Court of Claims, in *Guy v. United States*, 221 Ct.Cl. at 433, 608 F.2d at 870–71, stated:

[P]erfect objectivity in the rating process cannot be expected or even hoped for. The process of evaluating officers by other officers is an inherently subjective process which neither the military boards nor this court will interfere with unless there is clear and convincing evidence of factors adversely affecting the ratings which had *no business being in the rating process.* (Emphasis in the original.)

The plaintiff is correct that there is some evidence that indicates that Capt. Harris may have been unfairly treated in his 1978 OER and subsequent decertification. While this evidence concerns the court, it does not rise to the required level of clear and convincing evidence. Where reasonable minds can differ on the evidence, this court may not overturn the AFBCMR's decision. *See Grieg,* 226 Ct.Cl. at 273, 640 F.2d at 127.

## CONCLUSION

The Board's decision not to void the plaintiff's 1978 OER due to unfairness and its finding that the OER was rated as uncontrolled were not arbitrary and capricious, were supported by substantial evidence, and were not contrary to law. The plaintiff's challenge to his PRP decertification is premised on a finding that the 1978 OER is invalid. Because the court upholds the AFBCMR's decision that the 1978 OER is valid, plaintiff's claim challenging his

94

PRP decertification must fail. Therefore, the plaintiff is not entitled to Aviation Career Incentive Pay for the period following his decertification. For the foregoing reasons, plaintiff's motion for summary judgment is denied, and defendant's cross motion for summary judgment is granted. The Clerk will dismiss the complaint. Each party will bear its own costs.