**Melvin TAYLOR, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 93–364C.

United States Court of Federal Claims.

April 5, 1995.

Robert J. Mulderig, Law Offices of Ron Turo, Carlisle, PA, for plaintiff.

Martin F. Hockey, Jr., with whom were James M. Kinsella, David M. Cohen, Director, Frank W. Hunger, Asst. Atty. Gen., Dept. of Justice, Washington, DC, for defendant; LTC Nolan J. Benson, Jr., CPT Flora D. Darpino, Office of the Judge Advocate Gen., Dept. of the Army, Arlington, VA, of counsel.

## OPINION

SMITH, Chief Judge.

This case is before the court on defendant's motion to dismiss, or alternatively for summary judgment. Plaintiff asserts that he was improperly discharged from the United States Army and seeks a correction of his records, reinstatement into the Army, and back pay. Defendant moves to dismiss for lack of jurisdiction. Alternatively, defendant moves for summary judgment, alleging that the Army's decision is either not justiciable, or justiciable yet not arbitrary and capricious. After careful consideration of the briefs filed by both parties, and oral argument, this court finds jurisdiction to hear plaintiff's case. However, the court must grant defendant's motion for summary judgment for the reasons set forth below.

### FACTS

Plaintiff's claim stems from his "bar from reenlistment" in the Army as a result of procedures implemented by the Army since 1990 to reduce the number of individuals in uniform. These procedures are outlined in the Army's Qualitative Management Program (QMP), and the Enlisted Qualitative Early Separation Program (EQESP). The two programs are designed to: 1) increase the quality of Army officers, and 2) address budgetary constraints by reducing the number of enlisted personnel in the Army.

Melvin Taylor entered active duty in the Army on February 1, 1978. From that time, he served on continuous active duty until February 26, 1993, when he was involuntarily, but honorably discharged from the Army. In 1990, plaintiff Taylor reenlisted for the last time for a six-year period ending January 24, 1996. One of plaintiff's final assignments before his discharge was to Vicenza, Italy, where in 1991 he served as the Non–Commissioned Officer in Charge of the Central Processing Facility. During this assignment, soldiers at the facility were surveyed for comments upon the performance of plaintiff and other supervising officers. In the surveys, several soldiers noted improprieties in plaintiff's conduct, including "playing God" and engaging in "sexual harassment."

As a result, Major David L. Cook, who was plaintiff's Company Commander, investigated plaintiff's conduct. The investigation consisted of interviews with witnesses, survey complainants, and plaintiff himself. At its conclusion, Major Cook determined that plaintiff had engaged in improper conduct toward certain female soldiers, and unequal treatment of soldiers during initial processing. Accordingly, on December 30, 1991, Major Cook sent plaintiff a letter of reprimand which stated, in relevant part:

> You have used your rank and duty position as NCOIC of the Central Processing Facility in violation of AR 600–50, Standards of Conduct, and AR 600–20, Army Command Policy. Specifically, all soldiers were not treated equally during their in-processing, and there is also evidence that you have personally sexually harassed female soldiers during their in-processing by pressuring them into dates and off-duty relationships with you.

Major Cook forwarded the letter of reprimand to General James Musselman, requesting that it be filed in plaintiff's official military personnel file (OMPF). Plaintiff submitted a rebuttal to the reprimand, in which he denied treating soldiers differently. He did, however, admit to "bad judgment" in "asking some soldiers for social engagements." General Musselman directed that the letter of reprimand be filed in plaintiff's OMPF.

In March 1992, plaintiff received an adverse Enlisted Efficiency Report (EER) which contained three types of negative comments: 1) inappropriate behavior toward female soldiers, 2) allowance of personal desires to override professional judgment, and 3) problems separating supervisory functions from the social environment.

In a letter dated July 10, 1992, plaintiff was informed by the Army's Qualitative Management Program Board (QMP Board) that he would be barred from reenlisting in the Army. The Board cited plaintiff's Letter of Reprimand and EER as a basis for imposing the bar to reenlist. On February 28, 1993, plaintiff was honorably but involuntarily discharged from the service. Plaintiff's enlistment contract, however, was not due to expire until January 24, 1996.[1]

On August 10, 1992, plaintiff appealed the QMP Board's decision to the Standby Advisory Board. Despite the fact that plaintiff had the support of both plaintiff's Battalion Commander and Commanding General, the Standby Advisory Board denied his appeal in early November 1992. In the memo denying the appeal, the Standby Advisory Board concluded that the "past performance and estimated potential of the soldier are not in keeping with the standards expected of the Noncommissioned Officer's Corps." Plaintiff was ordered discharged no later than February 28, 1993. Plaintiff also appealed his EER to an Enlisted Special Review Board on August 26, 1992. This appeal was also denied.

On February 25, 1993, plaintiff filed suit against the United States Army[2] in the United States District Court for the Middle District of Pennsylvania, alleging improper discharge from the United States Army. On June 1, 1993, plaintiff's case was transferred to the United States Court of Federal Claims on the grounds that, as plaintiff alleged monetary damages of over $10,000, this court held exclusive jurisdiction under the Tucker Act, 28 U.S.C. § 1491.

## DISCUSSION

### I. Jurisdiction

The Tucker Act provides a basis for this court's jurisdiction over plaintiff's case. The Supreme Court has held that, under the Tucker Act, this court has jurisdiction to hear cases in which a plaintiff seeks monetary damages for the alleged unlawful sepa-

---

1. A "bar from reenlistment" by a QMP Board consists not only of the denial of reenlistment privileges, but discharge "no later than 3 months after [a soldier's] receipt of notification [of the bar]." *AR 635–200*, paragraph 16–8. The bar, therefore, allows for the release of a soldier before the expiration of his term of service (ETS).

2. In addition to the United States Army, plaintiff named the Secretary of Defense, the Secretary of the Army, and the Commander of the Third Brigade as defendants.

ration from the federal services. *United States v. Wickersham*, 201 U.S. 390, 399, 26 S.Ct. 469, 478, 50 L.Ed. 798 (1906). Plaintiff, however, must demonstrate that the provision of law on which he relies upon expressly or impliedly provides a right to payment. *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Sanders v. United States*, 594 F.2d 804, 809, 219 Ct.Cl. 285 (1979), *later proceeding*, 221 Ct.Cl. 988 (1979). Under the provisions of the Tucker Act, the equitable relief sought by plaintiff, such as reinstatement to his former position, can be provided "as an incident" to a monetary judgment. *Eastport S.S. Corp v. United States*, 372 F.2d 1002, 1007, 178 Ct.Cl. 599 (1967); *Sanders*, 594 F.2d at 809. In the present case plaintiff claims money damages in addition to equitable relief.

■ Defendant argues that plaintiff has established no right to payment sufficient to invoke Tucker Act jurisdiction. However, plaintiff's right to monetary relief is supplied by 37 U.S.C. § 204(a), which provides the basic entitlement to pay for members of the armed forces on active duty. *Sanders*, 594 F.2d at 810. A monetary claim based on 37 U.S.C. § 204(a) is sufficient to provide jurisdiction. *Id.*

## II. Justiciability—General

■ Justiciability is distinct from jurisdiction; it depends on "whether the duty asserted can be judicially determined, and whether protection for the right asserted can be judicially molded." *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962); *Murphy v. United States*, 993 F.2d 871, 872 (Fed.Cir.1993). Thus, justiciability goes to the basic character of the claim: whether it may be reviewed by the judiciary, or must be addressed solely through an alternative branch of our constitutional system. If a matter is non-justiciable, then no court may resolve it. *Murphy*, 993 F.2d at 872–3. *See Sargisson v. United States*, 913 F.2d 918, 921–2 (Fed.Cir.1990).

■ Justiciability becomes a crucial issue in cases of this type because of the judiciary's limited authority over matters of military discretion. The judiciary "must be scrupulous not to interfere with legitimate Army matters." *Murphy*, 993 F.2d at 872, quoting *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). In this matter it would be hard to measure the damaging effect of shifting this type of sensitive personnel and management decision from trained military professionals, to a non-specialist judiciary whose constitutional role is to apply and interpret legal standards as they relate to specific facts. Justiciability depends upon judicial access to an appropriate standard for definition and enforcement of the claimed rights.

■ Judicial review of an armed forces personnel decision is only appropriate where the Secretary of the Army's discretion is limited, and Congress has established tests and standards against which the court can measure the Secretary's conduct. *Murphy*, 993 F.2d at 873. While the Army's QMP and EQESP programs discuss retention of only the most qualified soldiers, and discharge of others, they do not set forth specific criteria for selecting the soldiers who are to be retained, and those who are to be discharged. Army Regulations 600–20 and 600–50 are also insufficient to provide this court with a basis for unfettered review of the Board's decision.[3] The regulations do not define the specific conditions required to discharge a soldier. Instead, they describe themselves as "providing guidance" and outlining "only minimum standards of conduct." *AR 600–20; AR 600–50.* Neither Congress nor the Army has provided tests or standards for review of a QMP Board discharge decision. Because neither congressional statutes nor Army regulations exist which would allow this court to determine in a principled and non-subjective manner the issue of plaintiff's suitability for continued service in the Army, the Board's decision is not justiciable. *Murphy*, 993 F.2d at 873.

---

**3.** From this point onward in the opinion, the terms "Board" or "QMP Board" refer to both the QMP Board and Standby Advisory Board.

### III. Limited Review

■ While the standards used by the QMP Board are not subject to review, plaintiff is also claiming here that he was barred from reenlistment, and hence separated from the Army, based upon a violation of Army procedures and improper evidence. This is a claim that is justiciable, since objective judicial standards exist to determine whether the Army's conduct in this respect was arbitrary and capricious, or without substantial evidence. The resultant limited review is outlined in *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983):

> It is ... settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province, and that courts cannot substitute their judgment for [the Board] when reasonable minds might reach differing conclusions on the same evidence. Thus, although judicial review of military service determinations with monetary consequences is available, the review jurisdiction has been summarized:
>
> > [R]eview of the administrative decision is limited to determining whether the ... action was arbitrary, capricious, ... or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [plaintiff] has been seriously prejudiced. *Id.* at 1156, citing *Clayton v. United States*, 225 Ct.Cl. 593, 595, 1980 WL 13179 (1980).

(Footnotes omitted.)

■ The above rule provides for limited review in the instant case. This court's review of the Board's decision to discharge plaintiff is limited to a determination whether the action was arbitrary, capricious, in violation of specific Army procedures, or unsupported by substantial evidence.

### IV. Analysis using the limited review standards

Plaintiff claims that by incorrectly using the term "sexual harassment" to describe his behavior in the Letter of Reprimand, Major Cook unduly prejudiced plaintiff's QMP review. Sexual harassment in the Army is expressly prohibited by AR 600–20.[4]

■ The court must therefore consider the possibility that the Army placed incorrect records in plaintiff's file arbitrarily, with caprice, or in violation of procedure. The Army's express procedural goal in filing unfavorable information is that the information be substantiated and objective. *AR 600–37,* Unfavorable Information, paragraph 1–4 ("Objectives of the regulation are to ... prevent adverse personnel action based on unsubstantiated derogatory information or mistaken identity.") Reviews, letters of reprimand, and other unfavorable data which are not objective assessments of the officer's performance therefore violate Army procedure. A substantially complete and fair record is a necessary requirement of proper consideration by a selection board. *Sanders,* 594 F.2d at 814; *Weiss v. United States,* 408 F.2d 416, 187 Ct.Cl. 1, 7 (1969), *later proceeding,* 190 Ct.Cl. 945, 1970 WL 5979 (1970).

■ Plaintiff's records are therefore subject to judicial correction and a court-ordered reconsideration by the QMP Board only if they are not objective assessments of his performance. It should be noted that plaintiff has a heavy burden in establishing the inaccuracy of his file. The unfavorable information in plaintiff's file must be found "arbitrary and capricious, or without rational basis, and seriously prejudicial to plaintiff" in order to be correctable by this court. *Sanders,* 594 F.2d at 813. These situations are

---

4. AR 600–20, paragraph 6–4 ("Sexual harassment"), provides:

 a. Sexual harassment is a form of sex discrimination that involves unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, when any of the following occurs: ...

 (3) Such conduct interferes with an individual's performance or creates an intimidating, hostile, or offensive environment.

 b. Any soldier or civilian employee who:

 (1) In a supervisory or command position, uses or condones implicit or explicit sexual behavior to control, influence, or affect the career, pay or job, of another soldier or civilian employee is engaging in sexual harassment.

"rare . . . because the proof must overcome the strong, but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Id.* In addition, public policy strongly compels the court to allow the widest possible latitude to the armed services in the administration of personnel matters. *Id.* Plaintiff bears the burden of proving by clear and convincing evidence that the presence of the disputed records was arbitrary and capricious. *Sanders,* 594 F.2d at 811. ·

 Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. Labor Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). If reasonable minds, due to the presence of substantial evidence, would characterize plaintiff's actions as they were described in the letter, then the letter is not open to further judicial analysis. *Sanders v. United States,* 594 F.2d at 814; *Harris v. United States,* 14 Cl.Ct. 84, 90 (1987), *aff'd without opinion,* 861 F.2d 729 (Fed.Cir. 1988).

 The facts in this case show that substantial evidence exists to support the letter's description of plaintiff's actions. The letter of reprimand stated only that plaintiff's actions "were evidence of sexual harassment." The letter did not state that plaintiff actually sexually harassed soldiers. The relevant "evidence," according to the letter, consisted of "pressuring [soldiers] into dates and off-duty relationships." Plaintiff admitted in a written rebuttal to the letter to asking soldiers of lower rank out on dates, and he admits to exercising "bad judgment" in so doing. Therefore, the substance of the evidence mentioned in the letter reviewed by the QMP board has been conceded by plaintiff as true. The Army defines sexual harassment as "unwelcome sexual advances . . . and other verbal or physical conduct of a sexual nature, when . . . such conduct interferes with an individual's performance or creates an intimidating, hostile, or offensive environment." AR 600–20, paragraph 6–4. Given this definition, a reasonable mind could certainly agree that plaintiff's behavior,

which included asking soldiers under his authority for dates, is evidence of sexual harassment. Having satisfied the requirements of the substantial evidence test, this court holds that the presence of the letter of reprimand in plaintiff's official military personnel file is not arbitrary and capricious, and that plaintiff's file is not subject to correction by this court.

 Having found that the Army complied with its procedures in compiling plaintiff's records, the court must now consider whether the Board's decision to discharge plaintiff was arbitrary and capricious. The Army asserts that plaintiff was not necessarily discharged because he was specifically found to have sexually harassed soldiers. Instead, the Army claims that it discharged plaintiff because his behavior was deemed "inexcusable and incompatible with the high standards of professional performance and military discipline," and "not in keeping with the standards expected of the Noncommissioned Officer's Corps." Yet again, plaintiff faces a heavy burden in overcoming the strong presumption of lawfulness and good faith afforded to public officers, in addition to the judicial deference normally provided the military. *Sanders,* 594 F.2d at 813.

 In using the substantial evidence test described earlier, this court concludes that the Board's conclusion is clearly one which could be rendered by a reasonable mind. *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 619, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). Plaintiff, by his own admission, has attempted to initiate relationships with personnel of inferior rank. These relationships are discouraged in the Army, because they are "fraught with the possibility of actual or perceived favoritism." AR 600–20, paragraph 4–14. Attempting to engage in these relationships leads to the appearance of improper use of rank for personal gain, which· can be as damaging to morale and discipline as actual misconduct. *Id.* Plaintiff had the capability to influence the actions of those he tried to date, a situa-

tion in which there is the "strongest justification for exercising restraint." *Id.* Army policy on this subject is based not on law, but upon the principle of "good judgment." *Id.* Plaintiff, however, admits to "bad judgment" in his rebuttal to the letter of reprimand. A reasonable mind might conclude that plaintiff's behavior does not conform to the standards of the highest-quality Army officers. The goal of the QMP program is retention of only the highest-quality Army officers. AR 601–280. The decision of the Board, therefore, is supported by substantial evidence, and cannot be further reviewed.

### V. *Dodson* Distinguished

The court notes that this case is distinguishable from *Dodson v. United States Government*, 988 F.2d 1199 (Fed.Cir.1993), in which material, verifiable, and indisputable facts in a soldier's file were misrepresented by the Army. In *Dodson*, a QMP-imposed bar from enlistment stemmed from a clerical error in which an erroneous EER score much lower than the actual one was included in plaintiff's service record. The Army acknowledged the mistake, yet did not correct the error. The court ordered a correction of the record, and a re-review by the QMP board of plaintiff's corrected record. In *Dodson*, the Federal Circuit held that the Army's misstatement of a plaintiff's score resulted from the arbitrary and capricious failure to correct an acknowledged mistake. This type of failure is quite distinguishable from any action in the present case. In contrast to *Dodson*, the disputed language in plaintiff's letter of reprimand involves *at most* the fairness of phrasing, not the misstatement of an undisputed fact. *See Dodson*, 988 F.2d at 1205 ("The EER 110 is not simply an 'unfair' rating. It is a fiction.")

### VI. Forwarding of Reprimand Letter

█ Plaintiff asserts that Major Cook, the Company Commander, made a procedural mistake in the handling of his letter of reprimand by forwarding it to General Musselman, thus "bypassing plaintiff's reviewer, in violation of Army Regulation 600–37." Army Regulation 600–37, in fact, contains no provision concerning the direction of a letter of reprimand to plaintiff's reviewer. The identity of plaintiff's reviewer, and the portion of AR 600–37 referenced by plaintiff are unclear. They were never revealed to the court throughout plaintiff's briefing and argument. However, this court determines that the Army properly followed all procedures in AR 600–37 which could relate to plaintiff's claim.

While Army Regulation 600–37 contains no provisions concerning the forwarding of a letter of reprimand to plaintiff's reviewer, it does mandate the forwarding of the letter for plaintiff's review. Army Regulation 600–37, § 3–4b(1), provides that "a letter to be included in a soldier's OMPF will be referred to the recipient concerned for comment according to paragraph 3–6." Paragraph 3–6 states, in relevant part, that "unfavorable information will be referred to the recipient for information and acknowledgement of his or her rebuttal opportunity." Plaintiff, in this case, was given an opportunity to rebut the comments made in Major Cook's letter of reprimand. Plaintiff took advantage of this opportunity. General Musselman referred to this rebuttal in his recommendation letter, which indicates that he had access to plaintiff's rebuttal. The General ordered placement of the letter in the OMPF, as required under paragraph 3–4b of AR 600–37, which provides that:

> a letter [of reprimand], regardless of the issuing authority, may be filed in the OMPF ... only upon the order of a general officer ... senior to the recipient or by direction of an officer having general court-martial jurisdiction over the individual.

Plaintiff's ability to review the letter of reprimand was therefore not bypassed by the Army; the Army properly followed the provisions of paragraph 3–6. This court therefore concludes that the procedures of AR 600–37 were properly followed, and that the decision of the QMP Board is subject to no further review on the issue by this court.

## CONCLUSION

Thus, while the decision of the QMP Board barring plaintiff from further service in the United States Army is non-justiciable, the court may review whether regulations or procedures for the protection of plaintiff's rights were followed. They were. Thus the court must grant the government's motion for summary judgment and dismiss plaintiff's claim.

**IT IS SO ORDERED.**