**Richard E. HOSKINS, II, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 95–844C.

United States Court of Federal Claims.

Jan. 27, 1998.

John A. Wickham, Gary Myers & Associates, Evergreen, CO, attorney of record for plaintiff.

Franklin E. White, Jr., Commercial Litigation Branch, Civil Division, Department of Justice, with whom were David M. Cohen,

Director, Civil Division, and Frank W. Hunger, Assistant Attorney General, attorneys of record for defendant. Lt. Colonel Kevin J. Chapman and Captain Matthew L. Dana, Department of the Army, of counsel.

## OPINION

HORN, Judge.

### FACTS

The plaintiff, Richard E. Hoskins, II, entered active duty with the United States Army on June 9, 1982 and was separated from the Army on June 30, 1993. Mr. Hoskins filed a complaint with this court which requests the defendant to set aside the bar to reenlistment and involuntary separation imposed on June 30, 1993 under the Army's Qualitative Management Program (QMP); to correct his military records, including removal of derogatory information from his personnel records; and for permission to apply for reenlistment in the Army. Mr. Hoskins' final enlistment was for a period of four years, beginning on February 22, 1990.

In a memorandum to Sergeant Hoskins, dated July 10, 1992, plaintiff was notified that he was barred from reenlistment pursuant to the QMP. The subject line of the July 10, 1992 Army memorandum of notification to plaintiff read, "Department of the Army Imposed Bar to Reenlistment Under the Qualitative Management Program (QMP)." The memorandum provided, in pertinent part:

1. The Department of the Army established the Qualitative Management Program as a means of improving the enlisted career force. This program requires that noncommissioned officers demonstrate professional ability by performance of duty and standards of conduct which set an example for junior soldiers. The CY92 Master Sergeant Selection Board, after a comprehensive review of your Official Military Personnel File (OMPF), determined that you are to be barred from reenlistment.

\* \* \*

3. During the review of your file, the board considered your record of service,

including performance and future potential for retention in the Army. The sealed envelope at Enclosure 2 contains an updated copy of your OMPF, a list of those documents indicating areas of deficiency or weakness which contributed most to the board's decision to bar you from reenlistment, and a copy of the administrative instructions pertaining to this action.

An enclosure attached to the July 10, 1992 memorandum provided as follows:

The Board identified the document(s) listed below, as a basis for your bar to reenlistment. The weaknesses reflected by the document(s) are keyed to specific professional traits as outlined in [the U.S. Army Noncommissioned Officer Professional Development Guide]. . . .

OTHER CITED DOCUMENTS/LETTERS

| Document Type | Date | ... | Area(s) of Deficiency/Weakness |
|---|---|---|---|
| Letter of Reprimand | 900316 | ... | D [Discipline] |
| Letter of Reprimand | 911024 | ... | D [Discipline] |

As noted in the enclosure, the first letter of reprimand was dated March 16, 1990. The reprimand was signed by a general officer, and provided in part:

1. It has been reported that on 11 March 1990 you were apprehended for driving under the influence, as shown by the results of a blood alcohol test registering .15 percent.

2. Conduct such as you have displayed will not be tolerated in the 9th Infantry Division (Motorized). There is no excuse for such complete disregard for the law and policies of the United States Army. Enlisted members of this Division have been charged with some of the most responsible tasks in today's Army and must be relied on at all times to exhibit sound judgment. Further conduct of this nature will demonstrate your lack of judgment and render you useless to the Division and to the Army. The chain of command will be reviewing your records to determine your future value to this Division and to the United States Army.

3. This is an administrative action and not punishment under Article 15 of the Uniform Code of Military Justice. I intend to file this letter in your Official Military Personnel File. You have the right, however, to submit matters on your behalf within 72 hours. These matters will be considered prior to final determination on filing. Whether you choose to submit matters or not, you are directed to respond, through your unit commander, to this reprimand within 72 hours.

The general officer considered plaintiff's written input and then directed that the letter of reprimand be placed in plaintiff's Official Military Personnel File.

The second letter of reprimand referenced in the Army's notification of intent to bar reenlistment under the QMP was received by plaintiff on October 24, 1991. The letter provided, in part:

1. On 12 September 1991 you assaulted your wife, Ruby Hoskins, by striking her with an open fist.

2. You are hereby officially reprimanded. Your actions while you were intoxicated are totally reprehensible. Threatening the safety and well-being of a spouse is unbecoming of any soldier in this command, the United States Army, and the general public. In the future I expect that you will act as a responsible member of the community and as a responsible soldier.

This second letter of reprimand also was placed in plaintiff's Official Military Personnel File.

The July 10, 1992 notification of the QMP bar to reenlistment provided for appeal to the Army Standby Advisory Board through plaintiff's chain of command. On July 29, 1992, this Board denied plaintiff's appeal and included the following language in its decision:

2. The Board judged that the past performance and estimated potential of the soldier are not in keeping with the standards expected of the Noncommissioned Officer Corps. Consequently, the bar will remain in effect.

3. The soldier must be separated from the U.S. Army no later than 30 Jun 93 . . . . Narrative reason for separation is 'Reduction in Authorized Strength—Qualitative

Early Transition Program.'... Service is characterized as 'Honorable.'

On April 14, 1993, plaintiff filed an application for relief with the Army Board for Correction of Military Records (ABCMR) and requested that the decision of the Army Standby Advisory Board be reversed. Plaintiff argued that his selection for inclusion in the QMP was based upon alcohol related incidents described in the two letters of reprimand referred to above, and, therefore, was improper because:

These two incidents clearly are alcohol related but not as a result of a discipline problem but as a result of a medical problem known as alcoholism which is recognized by the American Medical Association as being a disease.... I have been diagnosed as having this disease by the Residential Treatment Facility (RTF) at Fort Bliss, Texas a copy of my medical report is at Tab D.

Plaintiff also contended that "being selected for QMP during the time of down sizing of the military we are caught up in a numbers game and our records are not as thoroughly reviewed as they should be." Finally, plaintiff contended that when the Army Standby Advisory Board reviewed his appeal, they evaluated only two negative recommendations from his Brigade and Division Commanders, but were not aware of documents favorable to plaintiff.

Before the ABCMR responded to plaintiff's initial application, plaintiff submitted a second application on May 11, 1993 and requested that it be substituted for the first application. In this submission, plaintiff emphasized that he now had the "disease under control and *have successfully completed Track III of the Army Drug And Prevention Control Program (ADAPCP)* which is designed to be used as a manpower conservation program for people who have diseases such as Alcoholism." Plaintiff further contended that the Army's QMP conflicts with statutory and regulatory provisions which provide for the treatment and rehabilitation of soldiers with drug and alcohol problems rather than for separation.

On July 7, 1993, the ABCMR denied plaintiff's first application. The ABCMR, however, did not receive plaintiff's substitute application until after it had made its decision on his first application. Therefore, the substitute application was returned to the plaintiff without action.

The ABCMR's July 7, 1993 Memorandum of Consideration summarized the Army's policy on reenlistment and separation, as follows:

Army Regulation 601–280, chapter 10, sets forth policy and prescribes procedures for denying reenlistment under the QMP. This program is based on the premise that reenlistment is a privilege for those whose performance, conduct, attitude, and potential for advancement meet Army standards. It is designed to (1) enhance the quality of the career enlisted force, (2) selectively retain the best qualified soldiers to 30 years of active duty, (3) deny reenlistment to nonprogressive and nonproductive soldiers, and (4) encourage soldiers to maintain their eligibility for further service. The QMP consists of two major subprograms, the qualitative retention subprogram and the qualitative screening subprogram. Under the qualitative screening subprogram, records for grades E–5 through E–9 are regularly screened by the DA [Department of the Army] promotion selection boards. The appropriate selection boards evaluate past performance and estimate the potential of each soldier to determine if continued service is warranted. Soldiers whose continued service is not warranted receive a QMP bar to reenlistment.

Army Regulation 635–200 sets forth the basic authority for the separation of enlisted personnel. Chapter 16 covers discharges caused by changes in service obligations. Paragraph 16–8 applies to personnel denied reenlistment and provides that soldiers may be separated prior to expiration of term of service (ETS) when authorization limitations, strength restrictions, or budgetary constraints require the size of the enlisted force to be reduced. The Secretary of the Army, or his designee, will authorize voluntary or involuntary early separation under the authority of Title 10, U.S. Code, sections

1169 or 1171. Early separation under this paragraph is for the convenience of the government and will be characterized as honorable.

The ABCMR then discussed plaintiff's contentions:

2. The applicant's contention that the Standby Advisory Board was not afforded the opportunity to view his letter of redress and request for an Article 138 Investigation is without merit. The applicant initiated these actions after his appeal had been forwarded to the board and was not part of the appeal. This Board reviewed the documents in question and found that they contained no evidence to support the applicant's appeal.

3. The applicant's contention that his records did not receive a thorough review by the selection board is also without merit. This board thoroughly reviewed his OMPF and found that the selection board had sufficient reason to select him under the QMP.

4. The Board notes that the applicant has an alcohol problem and commends him for seeking necessary treatment. However, he also has two records of proceedings of NJP [nonjudicial punishment [1]] filed on the restricted portion of his OMPF which do not appear to be the result of alcohol related incidents. Accordingly, it appears that alcohol is not the sole reason for his lack of discipline, as he would lead the Board to believe.

The ABCMR concluded that "the applicant has failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice," and, thus, declined to reverse the decision of the Army Standby Advisory Board.

The two incidents involving nonjudicial punishment [2] referenced in paragraph four of the ABCMR decision quoted above, chronologically preceded the two letters of reprimand described earlier. In the first incident, plaintiff received nonjudicial punishment for the following misconduct:

That you at Tongduchon, Korea, on or about 27 January 1986, were disrespectful in language toward Sergeant David Magee, a noncommissioned officer, then known by you to be a noncommissioned officer, who was then in the execution of his office, by saying to him, '[F___] you,' or words to that effect. This is a violation of Article 91, UCMJ [Uniform Code of Military Justice].

Also, that you, were, at Tongduchon, Korea, on or about 27 January 1986, disorderly which conduct was of a nature to bring discredit upon the armed forces. This is a violation of Article 134, UCMJ.

In the second incident, plaintiff received nonjudicial punishment for the following misconduct:

In that you, did, at Camp Casey, Korea, on or about 21 July 1987, violate a lawful general regulation ... by wrongfully being outside the limits of your company area after 2400 hours [12:00 a.m.] without an 'overnight' pass. This is a violation of Article 92, UCMJ.

In that you, did at Camp Casey Korea, on or about 21 July 1987 wrongfully possess, with intent to deceive, a military pass ... you then well knowing to be unauthorized. This is a violation of Article 134, UCMJ.[3]

After the ABCMR denied plaintiff's application for relief on July 7, 1993, plaintiff through counsel submitted a third application for relief to the ABCMR on February 23, 1994. The third application for relief contended in part that plaintiff had not been diagnosed as "alcohol dependent" early in his Army service and, thus, had not received the

---

1. Nonjudicial punishment is authorized by Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815 (1994). Nonjudicial punishment is a disciplinary measure that is more serious than a letter of reprimand, but is less serious than judicial punishment which is adjudicated through a military court-martial.

2. In the administrative record, the exhibits of plaintiff's two nonjudicial punishments are pre-

ceded by a cover sheet which indicates that they are to be considered "Restricted Data."

3. On August 11, 1987, eleven days after the second incident for which he received nonjudicial punishment, plaintiff's unit commander imposed a bar to his reenlistment. Five months later, however, the bar to reenlistment was removed.

treatment that he needed from the Army; that plaintiff's assault on his spouse was alcohol related; that plaintiff eventually received the treatment that he needed and was rehabilitated; that Army regulations require that plaintiff be given the opportunity to demonstrate fitness for retention, which he demonstrated; and that volunteering for the rehabilitation program meant that the spousal assault incident should not have been used to support the separation action. Plaintiff further contended in his third application for relief to the ABCMR that reliance on the first letter of reprimand for driving while intoxicated was misplaced because the charge had been reduced to "mere negligent driving." Plaintiff also attacked the ABCMR's reference in its adverse opinion on plaintiff's first application to two records of nonjudicial punishment filed in the restricted portion of his OMPF by contending that the ABCMR was attempting to create additional reasons to deny the plaintiff an opportunity to reenlist in addition to the two incidents that resulted in the letters of reprimand.

By letter dated March 8, 1995, the ABCMR denied plaintiff's third application for relief. The Board determined that the third application for relief did not meet the test for reconsideration, which requires the "submission of newly discovered relevant evidence not previously considered by the Board."

Plaintiff subsequently filed a complaint in this court which declared that the denial of relief by the ABCMR was arbitrary and capricious, unsupported by substantial evidence, and contrary to law and Army regulation. Before this court, plaintiff seeks removal of the bar to his reenlistment in the Army; removal from his Army personnel records of all documents relating to plaintiff's bar to reenlistment and involuntary separation; constructive credit reflecting the completion of plaintiff's last enlistment, back pay and allowances from the date of his separation; an opportunity to apply for reenlistment in the Army; removal from his Army personnel records of the March 16, 1990 letter of reprimand for driving while under the influence of alcohol; and transfer of the October 24, 1991 letter of reprimand for assaulting his wife while intoxicated to the restricted section of plaintiff's Army personnel records, thereby limiting the use of the document. In response, defendant filed a motion to dismiss, following which the parties filed cross-motions for judgment on the administrative record.

## DISCUSSION

Defendant has filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC). In the alternative, defendant moves for judgment on the administrative record pursuant to RCFC 56.1. The plaintiff has filed a cross-motion for judgment on the administrative record.

When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes regarding the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.*

The standard for weighing the evidence presented by the parties when evaluating a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4), has been articulated by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir. 1989); *see also Alaska v. United States*, 32 Fed. Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that undisputed factual allegations that are included in the complaint by plaintiff are true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Alas-*

*ka v. United States,* 32 Fed. Cl. at 695; *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 746.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Alaska v. United States,* 32 Fed. Cl. at 695; *Catellus Dev. Corp. v. United States,* 31 Fed. Cl. 399, 404 (1994). The court should not grant a motion to dismiss, however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, 28 U.S.C. § 1491 (1994), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; it does not create a substantive right enforceable against the United States for money damages. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (*Mitchell I* ); *United States v. Testan,* 424 U.S. 392, 398–99, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc* ), *cert. de-*

*nied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

Moreover, a waiver of traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. at 953. Stated otherwise, "in order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990); *see also United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983) (*Mitchell II* ) (citing *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. at 954 (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States,* 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

This court's predecessor, the United States Court of Claims, articulated the jurisdiction of this court pursuant to 28 U.S.C. § 1491 in *Eastport Steamship Corp. v. United States,* as follows:

> Section 1491 of Title 28 of the United States Code allows the Court of Claims to entertain claims against the United States 'founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort'. But it is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money.

*Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 605, 372 F.2d 1002 (citations omitted).

The complaint filed in the above-captioned case states that jurisdiction is based

on 28 U.S.C. § 1491 and 10 U.S.C. § 1552. As discussed under the Tucker Act, a separate money-mandating statute distinct from the Tucker Act is required to establish jurisdiction in this court. The United States Court of Appeals for the Federal Circuit has ruled that "by its terms, section 1552(c) does not mandate pay at all. Rather, it provides for appropriate discretionary payment by the Secretary in certain circumstances." *Dehne v. United States*, 970 F.2d 890, 894 (Fed.Cir. 1992). *See Hernandez v. United States*, 38 Fed. Cl. 532, 537 (1997); *Ewing v. United States*, 36 Fed. Cl. 159, 163 (1996); *Barth v. United States*, 28 Fed. Cl. 512, 515 (1993); *but see Sanford v. United States*, 32 Fed. Cl. 363, 366–67 (1994). It has been stated, however, that the court has jurisdiction under section 1552 "if the Secretary makes a correction to military records and then fails to pay plaintiff the relief that has become due as a result of the correction." *Ewing v. United States*, 36 Fed. Cl. at 163. In theory, under such a set of facts, section 1552 becomes a money-mandating statute, and presumably is one of the "certain circumstances" envisioned by the Court of Appeals in the *Dehne* case. *Dehne v. United States*, 970 F.2d at 894. In the present case, however, the ABCMR made no corrections to plaintiff's records, and, thus, the exception is not activated.

 If the request for correction of his military records were plaintiff's only claim, one line of reasoning suggests that this plaintiff might be faced with the harsh result of preclusion from having his case reviewed in this court. *Ewing v. United States*, 36 Fed. Cl. at 163. In the instant case, however, plaintiff also has requested reenlistment rights to correct his allegedly involuntary and improper separation from the service. The United States Court of Appeals for the Federal Circuit has addressed the issue of jurisdiction for service members who allege involuntary and improper separation from the service, as follows:

It is well established that 37 U.S.C. § 204 ('Pay and Allowances of the Uniformed Services') serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge. 37 U.S.C. § 204 'confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service.' *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 810 (1979) (*en banc*). If the discharge was wrongful the statutory right to pay continues; this right serves as the basis for Tucker Act jurisdiction.

\* \* \*

It is no longer subject to debate whether a Tucker Act claim may be stated for military back pay and ancillary relief. The Court of Federal Claims, like the Court of Claims before it, has jurisdiction of such claims.

*Holley v. United States*, 124 F.3d 1462, 1465–66 (Fed.Cir.1997). *See also Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir.1995); *Murphy v. United States*, 993 F.2d 871, 872 (Fed.Cir.1993), *cert. denied*, 511 U.S. 1019, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994); *Sawyer v. United States*, 930 F.2d 1577, 1580 (Fed.Cir.1991); *Sargisson v. United States*, 913 F.2d 918, 920 (Fed.Cir.1990); *Taylor v. United States*, 33 Fed. Cl. 54, 58 (1995) (Army QMP discharge case). *Cf. Sammt v. United States*, 780 F.2d 31, 33 (Fed.Cir.1985) (stating that the court is without jurisdiction under 37 U.S.C. § 204 when the service member voluntarily resigned); *Ewing v. United States*, 36 Fed. Cl. at 162; *Bruton v. United States*, 34 Fed. Cl. 347, 352 (1995), *aff'd*, 92 F.3d 1206 (Fed.Cir.1996) ("[t]his court only has jurisdiction over involuntary discharges"); *McIntyre v. United States*, 30 Fed. Cl. 207, 211–12 (1993) (service member was separated under the Army's QMP, but his voluntary resignation rendered the court without jurisdiction over his claims). Therefore, this court finds that it has jurisdiction to adjudicate plaintiff's claims based on allegations involving involuntary separation from the military prior to the expiration of his term of enlistment.

Defendant contends, however, that the bar to reenlistment imposed on plaintiff through the Army's QMP which led to plaintiff's separation, should remain a military decision and should not be reviewable by any court. Defendant grounds this contention on the stated military objectives of the QMP:

a. This program is based on the premise that reenlistment is a privilege for those whose performance, conduct, attitude, and potential for advancement meet Army standards. It is designed to—

(1) Enhance quality of the career enlisted force.

(2) Selectively retain the best qualified soldiers to 30 years of active duty.

(3) Deny reenlistment to nonprogressive and nonproductive soldiers.

(4) Encourage soldiers to maintain their eligibility for further service.

b. Bars to reenlistment imposed under the provisions of the QMP are not intended to be rehabilitative in nature. They are designed to deny reenlistment to soldiers who are identified through the qualitative screening program as failing to meet Army standards.

Defendant, therefore, contends that plaintiff's claims are nonjusticiable, as they are not within the competency of the courts and are inappropriate for judicial review and determination.

■ Traditionally, courts have accorded deference to the personnel decisions of the military and have been reluctant to interfere with the authority of the executive in military and national security affairs. *Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir.1988), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988). An oft repeated theme in military pay cases is that "[t]he merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins v. United States,* 68 F.3d at 1322. Expanding on this theme, the Court of Appeals for the Federal Circuit has stated:

> Justiciability is distinct from jurisdiction; it depends on 'whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.' *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962). Justiciability is a particularly apt inquiry when one seeks review of military activities.

> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which [ ] grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Murphy v. United States,* 993 F.2d at 872 (citing *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534 539–40, 97 L.Ed. 842 (1953), *reh'g denied,* 345 U.S. 931, 73 S.Ct. 779, 97 L.Ed. 1360 (1953)).

■ At the same time, "[t]his court has consistently recognized that, although the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Adkins v. United States,* 68 F.3d at 1323. As stated in *Murphy v. United States,*

> When the military is given unlimited discretion by Congress, it is nevertheless bound to follow its own procedural regulations if it chooses to implement some. *Sargisson,* 913 F.2d at 921. But the utility of the distinction between procedural and substantive matters in assessing a court's ability to review military decisions should not be overemphasized. On procedural matters, the test or standard is inherent. A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion. The court is not called upon to exercise any discretion reserved for the military, it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard.

*Murphy v. United States,* 993 F.2d at 873. Likewise, in *Sargisson v. United States,* the court stated that "once the Secretary promulgated regulations and instructions and

made them the basis for [the service member's] release, his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all." *Sargisson v. United States*, 913 F.2d at 921. The court in *Voge v. United States* offered similar guidance, stating that, "[i]t has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all. . . ." *Voge v. United States*, 844 F.2d 776 at 779. Consequently, a controversy is justiciable only if it is "one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence." *Id.* at 780 (quoting *Greene v. McElroy*, 254 F.2d 944, 953 (D.C.Cir.1958), *rev'd on other grounds*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)).

█ In the instant case, defendant contends that there are no tests or standards which would permit a review by the court of plaintiff's reenlistment bar. As stated in *Taylor v. United States:*

> While the Army's QMP [Qualitative Management Program] and EQESP [Enlisted Qualitative Early Separation Program] discuss retention of only the most qualified soldiers, and discharge of others, they do not set forth specific criteria for selecting the soldiers who are to be retained, and those who are to be discharged. Army Regulation 600–20 and 600–50 are also insufficient to provide this court with a basis for unfettered review of the Board's decision. The regulations do not define the specific conditions required to discharge a soldier. Instead, they describe themselves as 'providing guidance' and outlining 'only minimum standards of conduct.' *AR 600–20: AR 600–50.* Neither Congress nor the Army has provided tests or standards for review of a QMP Board discharge decision. Because neither congressional statutes nor Army regulations exist which would allow this court to determine in a principled and non-subjective manner the issue of plaintiff's suitability for continued service in the Army, the Board's decision is not justiciable. *Murphy*, 993 F.2d at 873.

*Taylor v. United States*, 33 Fed. Cl. at 58 (footnote omitted). *See also Small v. United States*, 37 Fed. Cl. 149, 153 (1997). Nor has the plaintiff directed the court's attention to any tests or standards for review of a QMP decision. This conclusion, however, does not end the discussion.

Defendant also argues that, "[w]hile we agree with this Court's decision in *Taylor*, that challenges to the Army's QMP board decisions are nonjusticiable, we urge this Court to disregard the 'limited review' of military records found in *Taylor* as it is contrary to *Murphy*, which is controlling." The court, however, does not find that *Murphy* and *Taylor* are inconsistent.

The decision in *Taylor v. United States*, which also involved the QMP, provided that:

> While the standards used by the QMP Board are not subject to review, plaintiff is also claiming here that he was barred from reenlistment, and hence separated from the Army, based upon a violation of Army procedures and improper evidence. This is a claim that is justiciable, since objective judicial standards exist to determine whether the Army's conduct in this respect was arbitrary and capricious, or without substantial evidence. The resultant limited review is outlined in *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983):
>
> > It is . . . settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province, and that courts cannot substitute their judgment for [the Board] when reasonable minds might reach differing conclusions on the same evidence. Thus, although judicial review of military service determinations with monetary consequences is available, the review jurisdiction has been summarized:
> >
> > > [R]eview of the administrative decision is limited to determining whether the . . . action was arbitrary, capricious, . . . or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [plaintiff] has been seriously prejudiced. *Id.* at 1156, citing *Clayton v. United States*, 225

Ct.Cl. 593, 595, 1980 WL 13179 (1980).

(Footnotes omitted.)

The above rule provides for limited review in the instant case. This court's review of the Board's decision to discharge plaintiff is limited to a determination whether the action was arbitrary, capricious, in violation of specific Army procedures, or unsupported by substantial evidence.

*Taylor v. United States,* 33 Fed. Cl. at 59. *See also Strickland v. United States,* 36 Fed. Cl. 651, 655 (1996).

Similarly, the United States Court of Federal Claims in *Murphy,* citing *Grieg v. United States,* 226 Ct.Cl. 258, 640 F.2d 1261, 1265 (1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982), observed that judicial review was appropriate in the event of "pure legal error." *Murphy v. United States,* 993 F.2d at 874. The court in *Grieg* quoted from *Skinner v. United States* to discuss the distinction between "injustice" and legal error and noted that the basis for finding an "unlawful act" could include the abuse of discretion or arbitrary and capricious action, as follows:

> * * * It takes more than an unfair rating or simple injustice to merit our consideration or judicial relief. It must be an unlawful act made so by violation of statute, or regulation, or published mandatory procedure, or unauthorized act, or so unsupported by the evidence as to be a gross injustice, unlawful because of clear legal or factual error, manifest abuse of discretion, or arbitrary and capricious action amounting to bad faith or fraud, and seriously prejudicial. [Citations omitted.] [*Skinner,* 219 Ct.Cl. at 333, 594 F.2d at 830.]

*Grieg v. United States,* 226 Ct.Cl. at 265, 640 F.2d at 1266. The *Grieg* court then quoted from *Sanders v. United States:*

> * * * Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law,

regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due. [*Sanders,* 219 Ct.Cl. at 298, 594 F.2d at 811.]

*Grieg v. United States,* 226 Ct.Cl. at 266, 640 F.2d at 1266. And, the court in *Grieg* quoted the following additional language from *Sanders:*

> * * * To recover for failure to correct an alleged injustice, such as perhaps based on gross material error of fact or an action contrary to all evidence, it must be proved that such failure was arbitrary and capricious, or in bad faith, or contrary to law, or without rational basis, seriously prejudicial to plaintiff, and with monetary consequences. In such event, the abuse of administrative discretion rises to the level of legal error which merits judicial relief. These are comparatively rare cases. [Citations omitted.] Perhaps they are infrequent because the proof must overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith. [Citations omitted.] Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters. * * * Thus, while we may disagree with a correction board about whether or not a specific situation was unjust, we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions. *Snell v. United States,* 168 Ct.Cl. 219, 227 (1964). [*Sanders,* 219 Ct.Cl. at 301–02, 594 F.2d at 813–14.]

*Grieg v. United States,* 226 Ct.Cl. at 266–67, 640 F.2d at 1266–67.

Other Army QMP cases, like *Taylor,* also have employed a "limited review" or "pure legal error" test. *Dodson v. Army,* 988 F.2d 1199, 1204–05 (Fed.Cir.1993); *McIntyre v. United States,* 30 Fed. Cl. at 213 (1993). In the instant case, this court concludes that a "limited review" of the above captioned plaintiff's claims is appropriate.

■ The parties have filed cross-motions for judgment on the administrative record

pursuant to RCFC 56.1. Under RCFC 56.1(a), the same standards apply for judgment on the administrative record as for summary judgment under RCFC 56. *Mike Hooks, Inc. v. United States,* 39 Fed. Cl. 147, 153 (1997); *Neptune v. United States,* 38 Fed. Cl. 510, 513 (1997); *Strickland v. United States,* 36 Fed. Cl. 651, 654 (1996); *Nickerson v. United States,* 35 Fed. Cl. 581, 588 (1996), *aff'd,* 113 F.3d 1255 (Fed.Cir.1997). Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure and is similar in language and effect.[4] Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); RCFC 56(c).

Rule 56(c) provides that, in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Creppel v. United States,* 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.,* 974 F.2d 1304, 1306 (Fed.Cir.1992); *Lima Surgical Associates, Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. 674, 679 (1990), *aff'd,* 944 F.2d 885 (Fed.Cir.1991); *Rust Communications Group, Inc. v. United States,* 20 Cl.Ct. 392, 394 (1990). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "the

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.; see also Uniq Computer Corp. v. United States,* 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. at 2510–11; *see, e.g., Cloutier v. United States,* 19 Cl.Ct. 326, 328 (1990), *aff'd without op.,* 937 F.2d 622 (Fed.Cir. 1991). The judge must determine whether the evidence presents a disagreement that is sufficient to require further fact-finding, or whether the issues that have been presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and the motion must be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Stated otherwise, if the nonmoving party cannot present evidence to support its case under any scenario, there should be no need for the parties to undertake the time and expense of a trial and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

---

**4.** In general, the rules of this court are patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpret the rules of this court, including RCFC 56. *See Jay v. Sec'y*

*DHHS,* 998 F.2d 979, 982 (Fed.Cir.1993); *Imperial Van Lines Int'l Inc. v. United States,* 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States,* 17 Cl.Ct. 67, 70 (1989).

The initial burden on the party moving for summary judgment is to produce evidence showing the absence of a genuine issue of material fact, which may be discharged if the moving party can demonstrate that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552; *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. at 679.

Pursuant to Rule 56, a motion for summary judgment may succeed whether or not it is accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories, and admissions in order to demonstrate that a genuine issue for trial exists. *Id.*

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co., Inc. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.*, 646 F.2d 825, 833 (3d

Cir.1981); *Home Ins. Co. v. Aetna Casualty & Sur. Co.*, 528 F.2d 1388, 1390 (2d Cir.1976). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968); *Bataco Indus., Inc. v. United States*, 29 Fed. Cl. 318, 322 (1993), *aff'd*, 31 F.3d 1176 (Fed. Cir.1994). The court must evaluate each party's motion on its own merit, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc.*, 812 F.2d at 1391.

■ Neither party has argued that there are material facts in dispute in the above-captioned case. After an examination of the record and the parties' pleadings, the court agrees. Therefore, this case is ripe for judgment on the administrative record. Under the "arbitrary and capricious" standard, the scope of review is extremely narrow. *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974), *reh'g denied*, 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975). "[T]he standard of review does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed.Cir.1983). To overturn a decision of the ABCMR, the "plaintiff must demonstrate by 'cogent and clearly convincing evidence' (1) a material legal error or injustice in the correction board proceeding and (2) an adequate nexus or link between the error or injustice and the adverse action. *Hary v. United States*, 223 Ct.Cl. 10, 15, 618 F.2d 704, 706 (1980)." *Walters v. United States*, 37 Fed. Cl. 215, 221 (1997). A valuable summary of the applicable rules was offered in a case recently decided in this court, as follows:

> Once a plaintiff has sought relief from a correction board, however, the plaintiff is bound by that board's determination unless he can satisfy the difficult standard of proof that the correction board's decision was illegal because it was arbitrary, capri-

cious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, or money is due. *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 811 (1979).

These standards apply to the Court of Federal Claims in a review of a decision of the ABCMR. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986); *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir. 1983). There is a strong presumption that military officers and administrators discharge their duties correctly, lawfully, and in good faith. *Sanders,* 594 F.2d at 813. On summary judgment, it must be determined whether substantial evidence supports the decision of the ABCMR. *Arens v. United States,* 969 F.2d 1034, 1037 (Fed. Cir.1992). The burden is on the plaintiff to prove that the ABCMR decision was defective by 'cogent and clearly convincing evidence.' *Sawyer v. United States,* 930 F.2d 1577, 1580 (Fed.Cir.1991).

*Palmer v. United States,* 38 Fed. Cl. 316, 324 (1997).

The plaintiff asserts that the two letters of reprimand in plaintiff's personnel file described above, which involved driving under the influence of alcohol and assaulting his wife, "incorrectly reflected a discipline problem instead of a correctable medical problem associated with alcohol abuse." The plaintiff argues that because the two incidents were alcohol-related, Army regulations forbid any adverse use of the letters of reprimand by the Army board to bar plaintiff's reenlistment under the QMP. As stated by the plaintiff, "[u]nder AR 600–85, the Army had determined prior to the Promotion Selection Board and QMP selection that these two LORs [letters of reprimand] were not a discipline problem but an alcohol abuse problem that mandated retention and rehabilitation, based upon the commander's favorable review of Hoskins's entire record and medical team evaluation."

According to the plaintiff, Army Regulation 600–85, "Alcohol and Drug Abuse Prevention and Control Program," mandates that the retention of soldiers being treated for alcohol abuse is required, except for soldiers who "cannot or will not be rehabilitated." The plaintiff cites paragraph 3–3 of the regulation, which provides for commanders to interview substance abusers and, if appropriate, to refer individuals to the Alcohol and Drug Abuse Prevention and Control Program (ADAPCP) for an initial screening interview. The plaintiff then cites paragraph 3–7d of the regulation, which provides that:

> d. If, after the initial ADAPCP screening, a commander believes that a soldier would not respond favorably to rehabilitation or, based on the soldier's overall record, does not have the potential for future service, the soldier will be considered and, if required by paragraph 1–10 or if otherwise appropriate, be processed for separation ... in accord with AR [Army Regulation] 635–100 and/or AR 635–200.

The instant plaintiff was not processed for separation under the policy provisions of paragraph 3–7d. Plaintiff was diagnosed as alcohol dependent and placed in an Army alcohol treatment program, which he successfully completed. The inpatient portion of the program began February 10, 1992 and was completed by the plaintiff on March 20, 1992. The plaintiff then was enrolled in residential treatment aftercare on March 27, 1992. The plaintiff's aftercare was a one-year program, which was completed on March 25, 1993. Upon being enrolled in the aftercare program, the residential treatment facility sent a letter to plaintiff's commander, dated March 31, 1992, which stated in part:

> 2. The rehabilitation process needs continuing command support. In this respect you can assist by returning this individual to full duties commensurate with rank and time in service.... Consideration must be given to administrative separation from the U.S. Armed Forces if alcohol or other substance related problems occur.

> 3. This soldier must be stabilized at the current post for one (1) year LAW AR 614–5, dated 1 April 1983. The outpatient counseling arrangements mentioned below must be made for the following year through the Fort Riley ADAPCP LAW AR 600–85.

4. SGT Hoskins' prognosis is expected to be good provided this soldier follows, for at least one (1) year, the conditions of the Aftercare Contract.

The plaintiff was separated from the Army on June 30, 1993, three months after he completed the aftercare program on March 25, 1993 under the QMP, which competitively evaluated rehabilitated substance abusers and non-substance abusers alike for retention or separation. On the "Certificate of Release or Discharge from Active Duty," the entry in the box for "Narrative Reason for Separation" states: "Reduction in Authorized Strength—Qualitive [sic] Early Transition Program."[5]

■ The plaintiff, however, contends that "under the controlling statute and DOD regulations requiring treatment for alcohol rehabilitation over summary discharge, the Army was bound to retain and rehabilitate Mr. Hoskins." Plaintiff cites a Federal District Court case, *Poole v. Rourke,* 779 F.Supp. 1546 (E.D.Cal.1991), in support of his argument. In *Poole,* the court ruled that "the presumption of good faith is overcome when officials summarily discharge, without any evidence whatever that they considered offering probation or rehabilitation, a man who has served in the military for seventeen years without incident and who, on one occasion, tests positive for marijuana use." *Poole v. Rourke,* 779 F.Supp. at 1564–65.

The court in *Poole* cited and discussed the following statutory and Department of Defense authority, which Mr. Hoskins also cites in his pleadings submitted to this court:

> Not only did the Air Force fail to follow its own policy of carefully considering whether to discharge plaintiff or retain him with rehabilitation and probation, but it also flouted the controlling Department of Defense regulation favoring rehabilitation and probation. Regulations instituting the military drug and alcohol abuse program and regulations governing administrative separations were both promulgat-

ed by the Department of Defense; the regulations by their terms apply to all branches of the military. *See* 32 C.F.R. §§ 41.2 and 62.2 (1991). Department of Defense regulations control when they conflict with regulations promulgated by the Air Force.

The conflict between the regulations arises from the statute authorizing the Department of Defense's drug and alcohol abuse policy, which states that: '[t]he Secretary of Defense shall prescribe regulations ... [to] treat, and rehabilitate members of the armed forces who are dependent on drugs and alcohol.' 10 U.S.C. § 1090 (1988). Congress embraced a policy of rehabilitating members of the armed forces dependent on drugs. *Id.* Congress delegated to the Secretary of Defense the responsibility of developing programs and regulations to effectuate that rehabilitation. Pursuant to congressional mandate, the Department of Defense promulgated regulations in 1982 providing that:

> (a) It is the goal of the Department of Defense to be free of the effects of alcohol and drug abuse; of the possession of and trafficking in illicit drugs by military and civilian members of the Department of Defense; and of the possession, use, sale, or promotion of drug abuse paraphernalia. Alcohol and drug abuse is incompatible with the maintenance of high standards of performance, military discipline, and readiness. Therefore, it is the policy of the Department of Defense to:

> \* \* \* \* \* \*

> (5) Treat or counsel alcohol and drug abusers and rehabilitate the maximum feasible number of them.

> (6) Discipline and/or *discharge drug traffickers and those alcohol and drug abusers who cannot or will not be rehabilitated,* in accordance with appropriate laws, regulations, and instructions.

32 C.F.R. § 62.4(a)(5) & (6) (1991).[6]

---

5. The same phrase using the word "qualitative" appears in the "Appeal of DA [Department of the Army] Imposed Bar to Reenlistment Under the Qualitative Management Program (Enlisted Qualitive Early Separation Program)."

6. The 1992 version of the above-quoted regulations governing Alcohol and Drug Abuse by De-

*Id.* at 1565–66 (emphasis added; citations omitted).

The plaintiff relies on and quotes from the following language in *Poole:*

> As this court has noted, 32 C.F.R. § 62.4(a)(5) & (6) says rather clearly that it is the policy of the Department of Defense to 'treat or counsel ... drug abusers and rehabilitate the maximum feasible number of them "and it will *only* discharge" drug abusers who cannot or will not be rehabilitated....'

*Id.* at 1566 (emphasis added; citations omitted). However, even though the *Poole* court placed the word "only" inside quotation marks, as if to indicate that the Department of Defense will *only* discharge those who refuse, or fail, rehabilitation, the word is not contained in the language of 32 C.F.R. § 62.4(a)(6), quoted verbatim above. In other words, the *Poole* court was paraphrasing the regulations. The plain meaning of the language in the Department of Defense regulation is that "drug traffickers and those alcohol and drug abusers who cannot or will not be rehabilitated" will be disciplined and/or discharged in accordance with the appropriate laws and regulations. This language is not a mandate to exempt rehabilitated individuals from competitive manpower draw down programs and from consideration along with other categories of service members such as those who are not drug traffickers or substance abusers. The regulation does not guarantee greater employment retention rights to service members who have completed rehabilitation programs than to those who have never been involved in substance abuse activities or been enrolled in a treatment program.

Moreover, the *Poole* case is distinguishable from the instant case because, in *Poole,* the court focused on a policy of seemingly automatic discharge for noncommissioned officers who were identified marijuana users as antithetical to the statutory and regulatory requirement to consider previously substance-impaired service members for probation and rehabilitation. In the instant case, the plaintiff was successfully placed in the Army's alcohol treatment program, successfully completed a rehabilitation program, and was considered, along with his peers, in the Army's QMP. In *Poole,* the court found that the discharge was apparently automatic and was based on misconduct without proper evaluation of probation and rehabilitation. In the instant case, plaintiff's inclusion in the QMP was not the result of his substance abuse or rehabilitation program, although the plaintiff appears to be arguing that all rehabilitated substance abusers should be immunized from the QMP evaluation even if all non-substance abusing peers must undergo the QMP evaluation. The statute and regulations relied on by the court in *Poole* and on which the plaintiff in this case attempts to rely, however, should not be used to provide such insulation for substance abusers, even those who have been rehabilitated. The inclusion in the QMP must be based on a file-by-file review. There is no language in 10 U.S.C. § 1090 or in the implementing Department of Defense regulations which immunizes this plaintiff, or any other service member, from the reenlistment evaluation that is applicable to all service members.

Plaintiff also relies on the ABCMR's reference to the incidents of plaintiff's two nonjudicial punishments, described earlier, as a basis for contesting the ABCMR's decision. Although these two nonjudicial punishment records had not been cited in the notification of the reenlistment bar imposed under the QMP, in the ABCMR's discussion on the plaintiff's application for relief, the Board observed that:

> the applicant has an alcohol problem and commends him for seeking necessary treatment. However, he also has two records of proceedings of NJP [nonjudicial punishment] filed on the restricted portion of his OMPF which do not appear to be the result of alcohol related incidents. Accordingly, it appears that alcohol is not the sole reason for his lack of discipline, as he would lead the Board to believe.

partment of Defense Personnel is applicable in plaintiff's case and was unchanged from the

1991 version.

The QMP Board cited the two letters of reprimand as areas of weakness. The ABCMR also tried to explain its reference to the nonjudicial punishment in its March 8, 1995 response to plaintiff's third application for relief:

> Your assertion that the Board, by noting that you had received nonjudicial punishment (NJP) on two occasions, attempted to create additional reasons for sustaining the bar to reenlistment imposed against you under the Qualitative Management Program and, thus, reason to deny your application is unfounded. In your original application, you indicated that if a thorough review of your records was conducted, it would show that you were, in essence, a 'sterling' NCO when compared to other NCO's. However, a review of your records refuted that contention in the form of the two NJP's you had received. Consequently, this argument, as well as the others raised in your request for reconsideration, does not meet the criteria for resubmission of your case to the Board.

The record does not support the view that the original decision to bar plaintiff from reenlisting under the QMP was based on the Article 15 entries in the "Restricted Data" portion of plaintiff's personnel records. In fact, the QMP Board used the two letters of reprimand as areas of weakness and did not refer to the older records of nonjudicial punishment.

The plaintiff next argues that, although the ABCMR appeared to treat the two records of nonjudicial punishment as not alcohol related, both incidents which led to the nonjudicial punishments occurred during the time of plaintiff's alcohol treatment. For example, the plaintiff contends that the first Article 15 record of nonjudicial punishment was imposed February 1, 1986, and, as a result of the misconduct, the plaintiff was referred for alcohol treatment on February 3, 1986. The plaintiff contends that the second Article 15 nonjudicial punishment was imposed July 31, 1987, and that the plaintiff sought alcohol treatment on his own on August 14, 1987. Plaintiff further contends that the ABCMR was not qualified to challenge the medical, clinical, and the unit commander's determina-

tion that the plaintiff had been rehabilitated for further military service. In his filing with the court, plaintiff argues that "[w]hen the Army BCMR concluded that the two NJPs filed in Hoskins's restricted OMPF 'did not appear to be the result of alcohol related incidents', the Board was presuming that the ADAPCP evaluation process was flawed." While the plaintiff suggests the presumption of a flawed ADAPCP evaluation process, no such presumption appears anywhere in the ABCMR's July 7, 1993 Memorandum of Consideration. A careful reading of the ABCMR's memorandum restricts the Board's conclusion to the quoted portion that the nonjudicial punishments "did not appear to be the result of alcohol related incidents."

The plaintiff further contends that the ABCMR, in making the statement that alcohol did not appear to be involved in the two records of nonjudicial punishment, "tacitly recognized this DOD drug abuse rehabilitation policy by implying it would grant relief if Hoskins's disciplinary problems, embodied in the two LORS [letters of reprimand], resulted from an alcohol problem that was successfully treated." Once again, the Board implied nothing of the sort and, in any case, neither 10 U.S.C. § 1090 nor the implementing Department of Defense regulations provide a basis for creating a sanctuary from the QMP evaluation process for successfully rehabilitated substance abusers.

The goals of the QMP program, as identified in Army Regulation 601–280, include retention of the best qualified soldiers to thirty (30) years of service, along with the goal of denying reenlistment to nonprofessional and nonproductive soldiers. Regardless of the alcohol component of any of the incidents referenced in plaintiff's personnel file and referenced by the ABCMR, the traffic violation and the incident that involved striking his wife were considered during the QMP evaluation and the ABCMR review, as part of a review of plaintiff's personnel file. Although plaintiff would like to focus on whether the two Article 15 nonjudicial disciplinary infractions also involved alcohol induced behavior, it was the totality of the plaintiff's OMPF which resulted in the original personnel decision to deny plaintiff an

opportunity to reenlist and which caused the ABCMR to affirm the Secretary's exercise of discretion in that regard.

The plaintiff also contends that the first letter of reprimand cited by the QMP Board and the ABCMR "was improperly imposed because the civilian DWI [driving while intoxicated] charge was amended due to insufficient evidence." The plaintiff seeks the removal of this letter of reprimand from his military personnel records. In his July 29, 1992 appeal to the reenlistment bar, the plaintiff stated that:

3. The letter of reprimand dated 16 March 1990, was actually a charge of negligent driving, I was cited for traveling to [sic] fast for conditions and making an improper lane change. I am currently working to have this letter of reprimand removed by the imposing officer because the letter is inaccurate and does not reflect the true nature of the incident.

The plaintiff also cites an August 3, 1992 letter from the general officer who imposed the March 16, 1990 letter of reprimand. The general officer wrote that he had subsequently been informed that the "DUI [Driving Under the Influence] charge was changed to a negligent driving offense." Finally, the plaintiff relies on an affidavit from the attorney retained to defend him on the charge of driving while under the influence of alcohol:

[O]n October 22, 1991, Pierce County District Court No. One reduced a charge of Driving While Under the Influence of Intoxicants to Negligent Driving upon the compliance of Mr. Hoskins of various court ordered obligations. These obligations included obtaining an alcohol evaluation, attending alcohol information school and defensive driving school, not driving without a license and insurance, and paying a $400 fine. The reason that the prosecutor agreed to reduce the Driving While under the Influence charge was based on the strength of the prosecutor's case, which was minimal, and because, Mr. Hoskins was not under the influence of alcohol at the time he was driving. Based on these factors, the prosecutor agreed with my assessment and agreed to reduce the charge.

The ABCMR, however, was in possession of the pertinent facts underlying the letter of reprimand and the reduced charge disposition of the driving under the influence charge in county district court, as reflected in the Evidence of Record section of the ABCMR Memorandum of Consideration:

He [plaintiff] received a general officer LOR [letter of reprimand] on 16 March 1990 for being apprehended for driving under the influence of alcohol on 11 March 1990. He appealed the LOR; however, the commander denied the appeal and directed that the LOR be filed on the OMPF.

The applicant was charged in civil court on 11 March 1990 with driving under the influence and negligent driving. The applicant was placed on probation for one year. On 22 October 1991 he was found guilty of negligent driving and the case was closed.

## CONCLUSION

The plaintiff has not overcome the strong presumption that the responsible military officials properly exercised their discretion to bar plaintiff from reenlisting under the QMP and that they discharged their duties in good faith. Nor has the plaintiff carried his burden of proving that the ABCMR's decision was arbitrary, capricious or not in accordance with the law.

Therefore, based on a careful review of the facts and arguments presented, the court **DENIES** defendant's motion to dismiss, but **GRANTS** defendant's motion for judgment on the administrative record. The Clerk's Office is directed to enter judgment in accordance with this decision.

**IT IS SO ORDERED.**